IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALEJANDRO BENAVIDEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO: 3:07-CV-00105 |
| | § | (JURY TRIAL DEMANDED) |
| BURLINGTON NORTHERN SANTA FE | § | |
| CORP., ET AL., | § | |
| | § | |
| Defendants. | § | |

---

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION FOR SUMMARY
JUDGMENT OF DEFENDANT RAILSERVE, INC. PURSUANT TO RULE 56**

---

Richard A. Sheehy
State Bar No. 18178600

Sheehy, Serpe & Ware, P.C.
2500 Two Houston Center
909 Fannin Street
Houston, Texas  77010-1003
(713) 951-1000 – Telephone
(713) 951-1199 – Telecopier

***Attorney for Defendant
Railserve, Inc.***

## TABLE OF CONTENTS

Table Of Contents ......................................................................................................... ii

Table Of Authorities ..................................................................................................... iii

Nature And Stage Of Proceedings ................................................................................. 1

Issues Presented ............................................................................................................. 2

Summary Of The Argument ........................................................................................... 2

Statement Of Facts ......................................................................................................... 3

Exhibits And Evidence In Support Of The Motions ...................................................... 5

Summary Judgment Standard ......................................................................................... 6

Argument And Authority ................................................................................................ 7

      Plaintiff Has No Claim Against Railserve Under Federal Law Because
      Railserve Is Not A "Common Carrier" Under The FELA ................................. 7

Conclusion ..................................................................................................................... 22

Certificate Of Service .................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Aho v. Erie Mining Co.,*
  466 F.2d 539 (8th Cir. 1972) ................................................................... 16, 19

*Allen v. Railserve, Inc.,*
  No. 00-3135, 2001 WL 1352323 (E.D. La. 2001) ......................................... 13

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) .................................................................................... 7

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) .................................................................................... 6

*Ciaccio v. New Orleans Pub. Belt R.R.,*
  285 F. Supp. 373 (E.D. La. 1968) .............................................................. 21

*Coleman v. Houston Indep. Sch. Dist.,*
  113 F.3d 528 (5th Cir. 1997) ................................................................... 6, 7

*Edwards v. Pacific Fruit Express Co.,*
  390 U.S. 538 (1968) ............................................................................ 17, 18

*Ellison v. Software Spectrum, Inc.,*
  85 F.3d 187 (5th Cir. 1996) ........................................................................ 7

*Estate of Anderson v. Martin Marietta Materials,*
  567 S.E.2d 33 (Ga. App. 2002) ................................................................. 22

*Flores v. Coffield Warehouse Co.,*
  683 S.W.2d 31 (Tex. App.--Texarkana 1984, no writ) .................................. 20

*Iverson v. Southern Minnesota Beet Sugar Coop.,*
  62 F.3d 259 (8th Cir. 1995) ...................................................................... 19

*James v. Sadler,*
  909 F.2d 834 (5th Cir. 1990) ...................................................................... 7

*Johnson v. Turner Marine Bulk,*
  621 So.2d 13 (La. App. 1993), *writ denied,* 629 So. 2d 1169 (La. 1993) ....... 21

*Judwin Props., Inc. v. U.S. Fire Ins. Co.,*
  973 F.2d 432 (5th Cir. 1992) ...................................................................... 7

*Kelly v. General Elec. Co.,*
  110 F. Supp. 4 (E.D. Pa. 1953), *affirmed,* 204 F.2d 692 (3rd Cir. 1953),
  *cert. denied,* 346 U.S. 886 (1953) .......................................................... 8, 21

*Kieronski v. Wyandotte Terminal R.R. Co.*,
    806 F.2d 107 (6th Cir. 1987) ........................................................... 8, 10, 13, 19

*Lone Star Steel Co. v. McGee*,
    380 F.2d 640 (5th Cir.), *cert. denied*, 389 U.S. 977 (1967 ................................. 8, 9, 10, 12

*Loveless v. Railway Switching Serv., Inc.*,
    665 N.E.2d 252 (Ohio App. 1995)................................................................. 21

*Mack v. East Camden & Highland R.R. Co.*,
    297 F. Supp. 2d 1052 (W.D. Tenn. 2003)........................................................ 8, 14, 15

*Mahfood v. Continental Grain Co.*,
    718 F.2d 779 (5th Cir. 1983) ................................................................. 15, 16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)................................................................................. 7

*McCrea v. Harris County Houston Ship Channel Navigation Dist.*,
    423 F.2d 605 (5th Cir. 1970), *cert. denied*, 400 U.S. 927 (1970).................................... 16

*Mickler v. Nimishillen and Tuscarawas Ry. Co.*,
    13 F.3d 184 (6th Cir. 1993), *cert. denied*, 511 U.S. 1084 (1994)................................. 8, 16

*Montez v. Department of the Navy*,
    392 F.3d 147 (5th Cir. 2004) ..................................................................... 5

*New York Cent. R.R. Co. v. General Elec. Co.*,
    114 N.E. 115 (N.Y. 1916), *cert. denied*, 343 U.S. 636 (1916) ........................................ 9

*Sullivan v. Scoular Grain Co. of Utah*,
    930 F.2d 798 (10th Cir. 1991) .................................................................. 18

*Ward Transp., Inc. v. Public Util. Comm.*,
    376 P.2d 166 (Colo. 1962).......................................................................... 11

*Wells Fargo & Co. v. Taylor*,
    254 U.S. 175 (1920)................................................................................. 7

*Willard v. Fairfield Southern Co.*,
    472 F.3d 817 (11th Cir. 2006) .................................................................. 21

## Statutes

45 U.S.C. § 51................................................................................. 1, 7

TEX. LABOR CODE § 408.001 ...................................................................... 1

**Rules**

FED. R. CIV. P. 56.............................................................................................................. 1, 5, 6

**Other Authorities**

*Hearings before Subcommittee of the Senate Committee on the Judiciary on Amending the Federal Employer's Liability Act*, 76 Cong., 1st Session, 57, 58 (1939) ......................... 18

IN THE UNITED STATES DISTRICT COURT
OR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALEJANDRO BENAVIDEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO: 3:07-CV-00105 |
| | § | (JURY TRIAL DEMANDED) |
| BURLINGTON NORTHERN SANTA FE | § | |
| CORP., ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT RAILSERVE, INC. PURSUANT TO RULE 56

*To The Honorable United States District Judge Gray H. Miller:*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Railserve, Inc. ("Railserve") files this Memorandum of Law in Support of Its Motion for Summary Judgment.

### NATURE AND STAGE OF PROCEEDINGS

This case arises from personal injuries suffered by Plaintiff Alejandro Benavidez ("Plaintiff") when he fell from a railcar at the Deer Park Rail Terminal on or about April 4, 2005. Plaintiff was an employee of Railserve at the time of the accident. Plaintiff filed this action against Railserve alleging violations of the Federal Employer's Liability Act, 45 U.S.C. § 51 *et seq.* ("FELA").[1] Plaintiff also filed similar claims in this case against Defendants Deer Park Rail Terminal, Inc., Deer Park Rail Terminal LLC, U.S. Development Group, Inc., U.S. Development

---

[1] Plaintiff does not assert a cause of action against Railserve under Texas law, although he does so against the other Defendants in the case. (Original Complaint at 6). His claims under state law against Railserve would be barred by the exclusive remedy provision of the Texas Labor Code because Railserve had workers' compensation coverage for Plaintiff's injury. (Ex. 2 at 39, 144-45); TEX. LABOR CODE § 408.001.

Group LLC, USD LLC, and USD Terminals LLC ("Defendants"), as the purported owners or operators of the Deer Park Rail Terminal.[2]

On June 13, 2005, before he filed this action, Plaintiff filed a lawsuit with the same allegations against Railserve and other Defendants in the 234th Judicial District Court of Harris County, Texas, Cause No. 2005-38821; *Alejandro Benavidez v. Railserve, Inc., et al*. Plaintiff dismissed that case after the court heard argument on the Motions for Summary Judgment filed by Railserve, and the other Defendants, but before the Court made a ruling. In the state court case, the parties conducted discovery on the issues that are the subject of this motion, and that discovery is available to the Court and the parties as the Court considers this motion. Plaintiff filed this action in this Court on February 26, 2007. Docket call is set for February 29, 2008.

### ISSUE PRESENTED

Whether Plaintiff can assert a FELA cause of action against Railserve when Railserve performed nothing more than switching operations at the terminal, and did not carry persons or property for a fee.

### SUMMARY OF THE ARGUMENT

Railserve is entitled to a summary judgment on Plaintiff's FELA claim because the evidence submitted establishes that Railserve is not a "common carrier by railroad," which is a necessary element under the FELA, as a matter of law. Railserve was not engaged in "the transportation of persons or property from place to place for compensation, offering its services to the public generally." It was simply switching and storing railcars almost exclusively within the confines of the terminal, for a single customer.

---

[2]  The other Defendants will be moving for summary judgment by separate motion.

In addition, or in the alternative, Railserve is entitled to summary judgment because there is no evidence to support one or more essential elements of Plaintiff's claims in this case. There is no evidence that:

(1) Railserve is a "common carrier by railroad" under the FELA;

(2) Railserve operates a railroad as a means of carrying persons or goods for the public generally;

(3) Railserve is a railroad engaged in interstate commerce;

(4) Railserve actually performs rail service;

(5) Railserve provides services as part of a total rail service contracted for by a member of the public;

(6) Railserve holds itself out to the public as performing as part of a system of interstate rail transportation by virtue of common ownership with a railroad or by a contractual relationship with a railroad;

(7) Railserve receives remuneration for its services by a fixed charge or a percent of profits from a railroad;

(8) Railserve undertakes to carry for all persons indifferently;

(9) Railserve arranges for persons or goods to be shipped in interstate commerce.

### STATEMENT OF FACTS

Plaintiff brought this action against Railserve and others to recover damages for injuries sustained during an industrial accident that took place on or about April 4, 2005. (Plaintiff's Original Complaint, Dkt. Entry No. 1). Plaintiff was working for Railserve at the time of the accident. (Ex. 2 at 15; Ex. 3 at 31). Plaintiff suffered an amputation to his lower left leg when he fell or was thrown from the end of a railcar during switching operations. (Ex. 2 at 73, 111). His leg was on the rail when a car rolled over it. (*Id.* at 78).

3

The accident took place at the Deer Park Rail Terminal ("terminal"), which is a storage facility for railcars. (Ex. 3 at 25; Ex. 4 at 8; Ex. 7). The terminal provides storage and switching services within the yard by contract for individual customers of the terminal. (Ex. 4 at 60-61, 64-65; Ex. 7). It does not offer or advertise its services to the public generally. (Ex. 4 at 59, 64). No railroad has an ownership interest in the terminal, and the terminal is not engaged in the interstate transportation of goods and persons. (*Id.* at 65; Ex. 7). The terminal simply stores cars; it is not a common carrier railroad. (Ex. 4 at 8, 30, 60, 67; Ex. 7). Whether the cars are loaded or empty when they are stored at the terminal does not affect the operations there.

Railserve had a contract initially with the Deer Park Rail Terminal, Inc. ("DPRT, Inc.") to provide exclusive rail switching operations at the terminal to facilitate efficient storage of the railcars. (Ex. 1; Ex. 3 at 14-16; Ex. 7).[3] The Port Terminal Railroad Association ("PTRA") brings cars into the yard on a designated track when a customer of the terminal wants to store them there. Railserve takes the line of cars, divides them up, and puts the cars on appropriate tracks for storage inside the terminal. (Ex. 4 at 36, 61). When a customer notifies the terminal that the customer wants the cars, the terminal provides Railserve a list of cars that should be assembled and placed on certain tracks inside the terminal. (*Id.* at 61-62). Railserve provides the switching operations at the yard to move the cars around so they are available when needed. (*Id.*). The PTRA then picks up the assembled cars on the designated track. (*Id.*). Almost all of Railserve's switching operations take place inside the yard. (Ex. 2 at 107–08; Ex. 3 at 24; Ex. 4 at 61; Ex. 5 at 23). Railserve employees, including Plaintiff, are trained to do their work inside the yard, with limited exceptions. (Ex. 2 at 108).

---

[3] By the time of the accident, DPRT, Inc. no longer had any ownership interest in the terminal. It had already assigned its rights and obligations in the contract with Railserve to Deer Park Rail Terminal LLC ("DPRT LLC").

Railserve does not load cars at the terminal. (Ex. 3 at 21; Ex. 4 at 59, 63-64). With limited exceptions, it does not even know where the cars are going. (Ex. 5 at 24). Railserve is not paid a tariff, or an amount by a railroad or railcar owner to ship goods; instead, DPRT LLC pays Railserve a flat fee per month for switching operations. (Ex. 1; Ex. 3 at 30). The terminal is Railserve's only customer for services at that location. (Ex. 1; Ex. 3 at 37). Railserve performs no track maintenance, car cleaning, car loading or unloading, car inspection or repair, or checkpoint services. (Ex. 3 at 38-39). Railserve is not paid by customers of the terminal. (*Id.* at 41). Railserve simply moves the cars around the yard to facilitate storage of cars owned or leased by customers of the terminal. It does not matter if the railcars have any cargo for purposes of Railserve's operations. Railserve is not paid to move cargo as part of its duties.

Plaintiff brought this action against Railserve under the FELA, which provides for damages for an employee of a common carrier who is injured in the course and scope of employment in interstate commerce. Railserve denies that it is a "common carrier" under the FELA, so Plaintiff has no claim against Railserve under that statute, which is the only cause of action asserted against Railserve. Therefore, Railserve is entitled to a judgment as a matter of law against Plaintiff.[4]

## EXHIBITS AND EVIDENCE IN SUPPORT OF THE MOTIONS

This motion is based on the pleadings and discovery on file in this case and the following exhibits, which are submitted in an appendix:

---

[4] Railserve filed a motion to dismiss for lack of subject matter jurisdiction based on the argument that Plaintiff did not have a cause of action against Railserve under the FELA, which is the only basis for federal jurisdiction. The Court denied the motion, and held that Plaintiff's right to recover under the FELA should be decided by motion for summary judgment under Rule 56, rather than a motion to dismiss under Rule 12. (Dkt. Entry no. 43); *see also Montez v. Department of the Navy*, 392 F.3d 147, 149 (5th Cir. 2004).

(1)     Rail Switching Agreement dated December 3, 2002 between Deer Park Rail Terminal, Inc. and Railserve, Inc.;

(2)     Excerpts from the deposition transcript of Alejandro Benavidez;

(3)     Excerpts from the deposition transcript of Timothy Benjamin;

(4)     Excerpts from the deposition transcript for Paul Tucker (February 13, 2006);

(5)     Excerpts from the deposition transcript for Paul Tucker (November 1, 2006);

(6)     Affidavit of Raymond A. Neuer; and

(7)     Affidavit of Paul Tucker.[5]

## SUMMARY JUDGMENT STANDARD

Under Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Railserve can meet this burden by: (1) submitting summary judgment evidence that negates the existence of a material element of Plaintiff's claim, or (2) by showing there is no evidence to support an essential element of Plaintiff's claim. *Celotex*, 477 U.S. 322–25.[6]

---

[5]  Railserve and the other Defendants are submitting a single appendix because the evidence to support both motions is essentially the same.

[6]  *Celotex* also requires that an adequate amount of time for discovery elapse before a motion can be granted based on a lack of evidence. *Id.* at 322. As Railserve noted above, this case was originally filed in Texas state court in June 2005 and was voluntarily dismissed by Plaintiff in February 2007. During that nineteen month period, the parties exchanged written discovery and deposed Plaintiff and the representatives of Railserve and Deer Park Rail Terminal. (Exs. 2, 3, 4, 5). Plaintiff has also received and reviewed the contracts between Railserve and the terminal and between the terminal and its customers. *See* (Ex. 1; Ex. 4 at 17). As a result, Railserve submits that an adequate amount of time for discovery has elapsed in this case for the Court to consider the legal issues raised by this motion.

After Railserve makes a proper motion for summary judgment, Plaintiff must set forth specific facts showing that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). The substantive law identifies which facts are "material." *Id. at* 248; *see also Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Judwin Props., Inc. v. U.S. Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir. 1992).

The Court should view facts in the light most favorable to Plaintiff here and draw all reasonable inferences in his favor. *Coleman*, 113 F.3d at 533. However, the standard of review "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## ARGUMENT AND AUTHORITY

### Plaintiff Has No Claim Against Railserve Under Federal Law Because Railserve Is Not A "Common Carrier" Under The FELA.

Plaintiff attempts to avoid the exclusive remedy provision of the Texas Labor Code by making a claim against Railserve under the FELA. That statute provides, in relevant part, that every common carrier by railroad, while engaging in interstate commerce, shall be liable in damages to any person suffering injury while he is employed by the carrier in such commerce. 45 U.S.C. § 51. A common carrier by railroad is a company that operates a railroad as a means of carrying for the public, that is, a railroad company acting as a common carrier. *Wells Fargo & Co. v. Taylor*, 254 U.S. 175 (1920). "A common carrier has been defined as one who holds himself out to the public as engaged in the business of transportation of persons or property from

place to place for compensation, offering his services to the public generally. The distinctive characteristic of a common carrier is that he undertakes to carry for all people indifferently, and hence is regarded in some respects as a public servant." *Kieronski v. Wyandotte Terminal R.R. Co.*, 806 F.2d 107 (6th Cir. 1986); *see also Kelly v. General Elec. Co.*, 110 F. Supp. 4, 6 (E.D. Pa. 1953), *affirmed*, 204 F.2d 692 (3rd Cir. 1953), *cert. denied*, 346 U.S. 886 (1953). Plaintiff has the burden to prove that Railserve is a common carrier, and must present affirmative evidence to prove that status. *Mickler v. Nimishillen & Tuscarawas Ry. Co.*, 13 F.3d 184, 189 n.3 (6th Cir. 1993), *cert. denied*, 511 U.S. 1084 (1994); *Mack v. East Camden & Highland R.R. Co.*, 297 F. Supp. 2d 1052, 1057 (W.D. Tenn. 2003). Plaintiff's claims against Railserve fail in this case because Railserve was not a common carrier within the meaning of the FELA.

The courts have analyzed the issue of whether a company is a common carrier in different ways, but they all would reject that status for Railserve here. For instance, the Fifth Circuit in *Lone Star Steel Company v. McGee*, 380 F.2d 640 (5th Cir.), *cert. denied*, 389 U.S. 977 (1967), developed a set of considerations to determine whether an entity is a common carrier. In *Lone Star*, the plaintiff was injured during the course and scope of his employment as a railroad switchman with Lone Star Steel. The company provided transportation services for various industries that had facilities in the area. In addition, the court found that the operations of Lone Star Steel and the Texas & Northern Railway Company, which was a common carrier, were "highly integrated and mutually dependent." *Id.* at 648. Lone Star Steel was the sole owner of the railroad for all practical purposes. *Id.* at 647. The Court, under that unique fact pattern and applying the following non-exclusive factors, affirmed the lower court's ruling that Lone Star Steel was a common carrier:

(1)     Whether the defendant is actually performing rail services;

(2)     Whether the service being performed is part of the total rail service contracted for by a member of the public;

(3)     Whether the Defendant is performing as part of a system of interstate rail transportation by virtue of common ownership between itself and a railroad, or by a contractual relationship with a railroad, so the Defendant is deemed to hold itself out to the public as a common carrier; and

(4)     Whether payment for the services performed is received in some manner, such as a fixed charge from a railroad or a percent of the profits from a railroad.

*Id.*

The facts in the cited case are instructive on whether Railserve would be a common carrier under the Court's analysis. Obviously, the situation here is far different. Railserve does not carry goods for industries in the yard as part of their movement in interstate commerce. Further, Railserve is not part of a corporate structure that owns railroads. However, it is significant that the Court agreed that: "Courts have long recognized the distinction between plant facilities and 'true agencies of transportation.'" *Id.* at 644. The Court emphasized that even the movement of freight within a plant is not common carriage but rather industrial plant usage. *Id.* (citing *New York Cent. R.R. Co. v. General Elec. Co.*, 114 N.E. 115 (N.Y. 1916), *cert. denied*, 343 U.S. 636 (1916)). Here, Railserve is not even carrying cargo to move it from one point to another as part of its shipment in interstate commerce. It simply switches and parks cars. Whether the railcars are full or empty does not matter and does not change Railserve's operations or duties under the contract.

Even though the *Lone Star* court dealt with a very different factual scenario, the *Lone Star* factors, although not exclusive, support the view that Railserve is not a common carrier under the statute. First, Railserve does not provide rail services by transporting goods and persons from point to point for a fee. (Ex. 4 at 65). Railserve does nothing more than switch cars in the yard so the cars can be stored and later assembled into a train as needed. Second,

Railserve's services are not performed as part of a total rail services contracted for by a member of the public. Railserve only has a single customer, namely, the owner of the terminal. Railserve does not offer its services to the public indiscriminately or generally, and does not operate a railroad as a means of carrying persons or goods for the public.

Third, there is no common ownership between Railserve and a railroad. Railserve only has a single contract with DPRT LLC, which is not a common carrier. (Ex. 1; Ex. 4 at 65). Even more important, Railserve does not hold itself out to the public as a common carrier, and it does not carry goods or persons in interstate commerce. Finally, Railserve does not receive any fixed charge from a railroad, or a percent of profits from a railroad. It is paid a flat monthly rate by DPRT LLC, regardless of the number of cars that it may switch in a given month. (Ex. 1; Ex. 3 at 30).[7]

The United States Court of Appeals for the Sixth Circuit uses a different approach to the issue of whether a defendant is a common carrier under the FELA. In *Kieronski v. Wyandotte Terminal Railroad Company*, 806 F.2d 107 (6th Cir. 1987), the Court did not rely directly upon or resort to the analysis used by the Fifth Circuit. *Id.* at 108–09 (finding the listed factors are only considerations for a court to keep in mind when determining whether a carrier is a "common carrier"). Rather, "[o]ur review of the numerous cases determining whether a carrier is a 'common carrier' reveals that carriers can be divided into several categories." *Id.* at 109. The Court still focused on the definition of a common carrier as a company that holds itself out to the

---

[7] The discussion in *Lone Star* supports Railserve's position here. Even so, Railserve has to acknowledge that the holding in *Lone Star* is probably limited to the unique facts in that case. Since *Lone Star* was decided forty years ago, the courts have adopted a different approach to the issue of whether a defendant is a "common carrier by railroad," which Railserve will discuss in this brief. Subsequent opinions have recognized the unusual facts in *Lone Star*, especially the corporate relationship between Lone Star and the Texas & Northern Railway Co.

public as engaged in the business of transportation of persons or property from place to place for compensation, offering those services to the public generally.

The first category discussed by the Court would be services performed by a company inside its plant. "Courts have long recognized that in-plant facilities are not common carriers, even where those facilities are quite extensive." *Id.* at 109. The terminal in the case at bar is the functional equivalent of an in-plant switching service. All activities take place within a small yard. The PTRA brings cars into the yard to a set location. Railserve then takes those cars and puts them on appropriate tracks for storage. Later, when a customer wants the cars for rail service, the terminal gives Railserve a switching list, and Railserve prepares the string of cars into a train. The PTRA then picks up that train of cars at a particular location. Railserve's activities are limited to switching and storage of railcars within this yard, which is exactly what happens in a plant facility. This situation is even less favorable to Plaintiffs than an in-plant facility because Railserve does not load cars for shipment; it only switches and stores cars. With limited exceptions, Railserve does not even know where the railcars are going.

The second category of carriers discussed by the Court is a private carrier. Private carriers haul for others, but only pursuant to individual contracts, entered into separately with each customer. Such a private carrier is not a "common carrier" within the meaning of the statute. *Id.* at 109 (citing *Ward Transp., Inc. v. Public Util. Comm.*, 376 P.2d 166, 169 (Colo. 1962)). Here, at best, Railserve would be considered a private carrier, because it only had a single contract with DPRT, Inc.[8] It does not have contracts with the public generally for its services.

---

[8] As noted above, the contract was assigned to Deer Park Rail Terminal LLC before the accident made the basis of this case.

The third category would include "linking carriers," which may or may not be common carriers under the statute. However, such a carrier must link two or more common carriers so that the linking carrier becomes a vital part of the common carrier system, and therefore becomes a common carrier itself. There is no such situation here. Railserve does not take goods or persons loaded on trains from one common carrier to another. The cars may or may not be empty when they are stored in the yard, but Railserve is not delivering the cars from one carrier to another as part of the interstate transportation system. The Court was careful to note that a company does not become a common carrier merely by being connected to a common carrier, because such connection is a common feature of in-plant systems. *Id.* at 109. The switching yard has to be connected to a common carrier so the cars can be moved in and out of the yard. The terminal here is essentially a parking lot for railcars, which is not part of the shipment of goods in interstate commerce.

Finally, the Court noted a situation where a company performs the functions of a common carrier because of an extensive corporate relationship between the company and a common carrier. *Id.* at 109. The Court concluded *Lone Star* fell into this category. "Lone Star looks initially like a typical in-plant operation, which would not be characterized as a 'common carrier,' except that Lone Star's operation did not end there." The Court concluded that Lone Star became a common carrier by virtue of its close corporate relationship with a common carrier combined with its operations. *Id.* at 109. Here, however, Railserve is not owned by a common carrier, and has no contracts with a common carrier. It is simply an independent company that provides switching and storage services within the yard. It certainly does not fit into the category of a company that is part of an overall transportation system. Unlike Lone Star, Railserve's operations in the terminal in fact do "end there."

After discussing the analytical framework, the *Kieronski* Court applied it and rejected FELA status for the terminal railroad. The facts in the cited case and the case at bar are similar. In the cited case, Plaintiff was injured during the course of his employment with Wyandotte Terminal Railroad. He sued Wyandotte for compensation under the FELA. The trial court concluded that Wyandotte was not a common carrier within the meaning of the FELA and dismissed the case. Kieronski filed an appeal from that order.

The Court of Appeals affirmed. Initially, Wyandotte's railroad line was on two parcels of property owned by BASF Wyandotte Corporation. Its operations were almost entirely directed to in-plant switching for BASF. The tracks in both parcels were connected to the tracks of common carrier railroads. Wyandotte also had the right to use the tracks between the two parcels of land so it could perform switching duties at both locations. Later, BASF sold the property to other companies, but arranged to have Wyandotte switch the rail cars for the purchasers of the property.

The Court of Appeals agreed that Wyandotte was not a common carrier under the FELA. The Court found that Wyandotte essentially operated the equivalent of an in-plant system. The system connected the two common carriers, but it did not act to link them to perform functions for the customers of the common carriers. Wyandotte merely connected the plants to the common carriers in a matter typical of in-plant systems. The Court emphasized that "courts have long recognized that in-plant rail facilities are not common carriers" as the basis for its decision. *Id.* at 107. The Court should reach the same result here.

Regardless of the approach, the courts have concluded uniformly that companies in Railserve's position are not common carriers under the statute. In fact, in *Allen v. Railserve, Inc.*, No. 00-3135, 2001 WL 1352323 (E.D. La. 2001), the Court concluded that Railserve itself

was not a common carrier under the FELA. In that case, Kwan Allen sued Railserve for injuries sustained when he attempted to open a broken valve on an acid car while he was working as an engineer for Railserve. Railserve filed a motion for summary judgment taking the position that the FELA claims should be dismissed because Railserve was not a common carrier by railroad. Railserve provided an affidavit that is consistent with the evidence before the Court here. In a short opinion, the Court concluded that Railserve was not a "common carrier" by railroad as contemplated by FELA.

The facts in *Mack v. East Camden & Highland Railroad Company*, 297 F. Supp. 2d 1052 (W.D. Tenn. 2003), are remarkably similar to the facts here. In that case, James Mack was injured at the Milan Army Ammunition Plant during his employment by East Camden. He filed a complaint to recover damages under the FELA. East Camden filed a motion for summary judgment and raised the defense that it was not subject to the FELA because it was not a common carrier.

In that case, East Camden had an exclusive contract with the operator of the ammunition plant. It performed switching of railcars for the plant and used the balance of the facility for storage of railcars. It did not own or maintain any track at that plant. Two railroads, who were common carriers, delivered and picked up cars at the facility by pushing or pulling the cars in and off the main line. They would deliver the cars to East Camden, who then took the cars inside the plant. East Camden had a single contract with the owner of the plant for its services. East Camden had several other locations in which it performed similar services. East Camden did not solicit common carrier business from the general public and was not responsible for the transportation of cars to or from the yard.

The trial court granted the motion for summary judgment. The court held that Plaintiff had the burden of proof to show that East Camden held itself out to the public as engaged in the business of transportation of persons or property from place to place for compensation, offering its services to the public generally. "The distinctive characteristic of a common carrier is that it undertakes to carry for all people indifferently." *Id.* at 1057. The court discussed the law of common carriers at length. The court concluded that East Camden could be characterized as an in-plant carrier, which is not a common carrier under the FELA. *Id.* at 1059. In the alternative, the court found that East Camden could be a private carrier which did not undertake to carry for all persons indiscriminately, but moved and stored cars pursuant to individual contracts. "Defendant does not transport people or property from place to place. Thus, Defendant may be characterized as a private carrier operating an in-plant operation. Consequently, Defendant is not a common carrier for the purpose of FELA liability." *Id.* at 1061. Once again, Railserve is even one more step removed from East Camden, which was in the same position as the terminal here.

In *Mahfood v. Continental Grain Company*, 718 F.2d 779 (5th Cir. 1983), decided sixteen (16) years after *Lone Star*, the Fifth Circuit reached a similar conclusion. In that case, Peter Mahfood worked as a mechanic for Continental Grain Company. His duties included repair work on railroad locomotives owned by Continental. He claimed that he was injured when he was repairing the hydraulics on a dump truck. Continental had several thousand feet of railroad track within its grain export facility and used two locomotives and a four man crew to operate the railroad. After cars were unloaded at its facility, a common carrier took the cars from the property. Continental's railroad activities were limited to the grounds of the export facility, except for a section that it used for storage only. The trial court granted a summary judgment for Continental, and Mahfood appealed.

The Fifth Circuit affirmed. The Court concluded that Continental did perform some railroad functions as part of its business, but the Court did not find that such activities were part of a total rail service that Continental agreed to perform for the public. The Court also found that: "Continental does not receive either directly or indirectly remuneration for its rail services through fixed charges or through dividends from a subsidiary for which is fulfills rail services." *Id.* at 782. The Court relied on a number of decisions by other courts in support of its opinion. *See Aho v. Erie Mining Co.*, 466 F.2d 539 (8th Cir. 1972) (mining company was not a common carrier when it operated a railroad that moved pellets from its plant to its facilities for shipment to other states because the railroad performed no direct services for other industries or carriers, and did not hold itself out as a common carrier); *McCrea v. Harris County Houston Ship Channel Navigation Dist.*, 423 F.2d 605 (5th Cir. 1970), *cert. denied*, 400 U.S. 927 (1970) (navigation district was not a common carrier when it maintained railcars and tracks at its grain storage facilities because the primary function of the cars was to convey grain from a site where it was delivered by railroad to grain elevators for eventual shipment to a wharf).

In *Mickler v. Nimishillen and Tuscarawas Railway Company*, 13 F.3d 184 (6th Cir. 1993), *cert. denied*, 511 U.S. 1084 (1994), Thomas Mickler claimed that he fell from a slick locomotive and suffered serious injuries when he was working as an engineer for the railroad. He sued the railroad under the FELA. The railroad was a subsidiary of Republic Engineered Steel and only transported materials and products for the parent corporation. It only operated within the premises of Republic's plant and on an adjacent interchange track, which was owned by three common carriers. The railroad also transported shipments between common carrier railroads and the Republic plant. The trial court granted the motion for summary judgment because Defendant was not a common carrier under the FELA.

The Court of Appeals affirmed. The Court pointed out that a common carrier had to be a company that held itself out to the public as engaged in the business of transportation of persons or property from place to place for compensation, offering the services to the public generally. "The distinctive characteristic of a common carrier is that he undertakes to carry for all people indifferently, and hence is regarded in some respects as a public servant." *Id.* at 186. The Court rejected the view that Defendant was a common carrier because it transported products for interstate destinations, and operated on tracks that linked to a common carrier.

In *Edwards v. Pacific Fruit Express Company*, 390 U.S. 538 (1968), Pacific Fruit owned, maintained, and leased refrigerator cars to railroads to transport products in interstate commerce. Because it repaired its own cars, Pacific Fruit also owned buildings, plants, switching tracks, and equipment to make those repairs. Elisha Edwards worked at one of the repair plants. His duties were to transport and help store ice in cars that were carried by the railroads. He was severely injured while he was performing those duties. He brought the action against Pacific Fruit under the FELA, but the trial court granted a summary judgment because Pacific Fruit was not a common carrier under the statute. The Court of Appeals affirmed. 378 F.2d 54 (9th Cir. 1967).

The Supreme Court affirmed. The Court recognized that Pacific Fruit performed some railroad functions in conducting its business of providing and servicing insulated railroad cars. Pacific Fruit maintained cars that were leased to railroads, and serviced those cars while in transit. It had the right to control their ultimate destination. Pacific Fruit also had yards and facilities for the repair and storage of the cars. However, the Court concluded that those functions were not sufficient to make Pacific Fruit a common carrier by railroad within the meaning of the FELA. The Court realized that: "There exists a number of activities and facilities which, while used in conjunction with railroads, and closely related to railroading, are yet not

railroading itself." 390 U.S. at 540. The Court relied in part on discussions in Congress dealing with amendments to the FELA in 1939.

One of the proposed amendments in Congress in 1939, which would have expanded the definition of a "common carrier," was intended to nullify the Court's prior construction of the Act. Congress rejected that amendment. "By refusing to broaden the meaning of railroads, Congress declined to extend the coverage of the Act to activities and facilities intimately associated with the business of common carrier by railroad." *Id.* at 541 (citing *Hearings before Subcommittee of the Senate Committee on the Judiciary on Amending the Federal Employer's Liability Act*, 76 Cong., 1st Session, 57, 58 (1939)). The Court concluded that Pacific Fruit was not a common carrier even through it did maintain and repair railcars.

Similarly, in *Sullivan v. Scoular Grain Company of Utah*, 930 F.2d 798 (10th Cir. 1991), Kenneth Sullivan suffered an amputation of his left arm and leg in an accident while unloading grain. Sullivan was an employee of Scoular Grain Venture at the time of the accident. Grain was shipped to Scoular Grain Venture by railroad companies. Scoular Grain Venture then moved the loaded grain cars to its warehouses with a vehicle that was similar to a locomotive. Sullivan filed the action against Scoular Grain Venture and others under the FELA. The trial court granted a summary judgment to Scoular Grain Venture.

The Court of Appeals affirmed. The Court recognized that Scoular received grain shipped by railroad companies and stored grain adjacent to railroad tracks owned or maintained by railroad companies. The Court also noted that Scoular owned or leased miles of railroad track, hundreds of railroad cars, and several switch engines. Even so, the Court concluded that Scoular Grain Venture was not a common carrier under the FELA because those factors did not make Scoular a common carrier railroad. The Court discussed the opinion in *Edwards v. Pacific Fruit*

*Express Co.* at length. The Court also discussed the different approaches used by the Courts of Appeals in dealing with this issue, and found that the facts in that case would compel the same conclusion that Scoular Grain Venture was not a common carrier subject to liability under the FELA.

In *Iverson v. Southern Minnesota Beet Sugar Cooperative*, 62 F.3d 259 (8th Cir. 1995), Kenneth Iverson was injured while he was working for the Cooperative as a switchman in its plant rail yard. Plaintiff brought the action against the Cooperative under the FELA. The trial court dismissed the claims because the Cooperative was not a common carrier under the statute, and the Court of Appeals affirmed.

In that case, the Cooperative operated a rail yard at its Minnesota factory. The yard included nearly five miles of railroad track, but lay within the factory's property. A common carrier railroad provided interstate transportation for commodities shipped to and from the factories. The tracks in the yard were connected to the main tracks that could be used to ship the product outside the plant. The Cooperative switched cars and placed them in position for unloading at various loading docks in the factory. The Cooperative did not allow its employees to operate outside the yard.

On these facts, the Court found that the Cooperative was not a common carrier. The Court stated flatly that industries operating in-plant rail facilities for their own benefit and not offering transportation to the public for a fee are not considered common carriers. *Id.* at 263 (citing *Kieronski*, 806 F.2d at 109; *Aho*, 466 F.2d at 541). The Court relied heavily on the fact that the Cooperative did not perform part of the delivery service undertaken by another railroad, did not make deliveries for other companies, and did not hold itself out to the public to perform such services. *Id.* at 264. Railserve falls within the same fact pattern.

19

In a case from the Texas state court of appeals, *Flores v. Coffield Warehouse Company*, 683 S.W.2d 31 (Tex. App.—Texarkana 1984, no writ), Javier Flores was injured while he was crossing railroad tracks between two stationary cars parked on the tracks. A switch engine pushed one of the cars without warning, and Flores was thrown onto the tracks. The car rolled over Flores and amputated his leg. Flores was working for Coffield at the time of the accident.

Coffield was in the business of storing grain and merchandise. Southern Pacific Transportation Company served the storage facility and had a railroad spur track to the property. A customer who wanted to store merchandise at the warehouse would make arrangements with Coffield for storage and with another company for delivery to the warehouse. Southern Pacific delivered the loaded railcar to a site on the Coffield premises. Coffield would move the railcars short distances incident to the unloading and storage process within the yard. Coffield operated its rail facilities only in connection with its storage business.

Flores sued Coffield under state law and the FELA. Coffield filed a motion for summary judgment arguing that it was not liable under state law because of the exclusive remedy provision of the Labor Code, and that it was not liable under the FELA because it was not a common carrier under the Act. The trial court granted the motion, and Flores appealed.

The Court of Appeals affirmed. The Court concluded that Coffield was not a common carrier by rail because it did not transport goods for public purposes, and that the internal transportation of goods or grain by Coffield at its facility was not part of an interstate rail transportation system. "Because Coffield is not a common carrier by railroad under the FELA, it is not answerable to its employee, Javier Flores, under this Act." *Id.* at 32.

The same reasoning applies here. Railserve provided switching services within the terminal to facilitate efficient storage of railcars. It did not transport people or goods for public purposes, and its services were not part of an interstate rail system. In fact, Railserve is even more removed from Coffield as a common carrier by railroad because it does not transport goods for loading and unloading in the yard; it simply moves cars around for storage until the cars are needed by the terminal's customers. The Court's reasoning compels the same result.

Other courts have reached the same conclusion. *See, e.g., Willard v. Fairfield Southern Co.*, 472 F.3d 817 (11th Cir. 2006) (Defendant not a common carrier when it performed rail services within own boundaries and hauled cargo for customers pursuant to individual contracts); *Kelly*, 110 F. Supp. at 6 (plant owner is not a common carrier even though it had a system of internal tracks over two miles in length, two switching engines used in moving cars within the confines of the plant, a number of cars which it rented to rail carriers for the transportation of its products, and other cars used for the exhibition of its products because the company did not hold itself out generally to the public as offering services of transportation for hire); *Loveless v. Railway Switching Serv., Inc.*, 665 N.E.2d 252 (Ohio App. 1995) (in plant rail system operations that consisted primarily of moving cars between holding yards and various points within a client's facilities for incoming and outgoing cars for use by railroads did not make defendant a common carrier because it did not transport people or property from place to place as required by the FELA); *Ciaccio v. New Orleans Pub. Belt R.R.*, 285 F. Supp. 373 (E.D. La. 1968) (company that moved cargo by railroad cars between a wharf and staging points in the city was not a common carrier by railroad because it did not carry persons or goods generally for hire as a public employment); *Johnson v. Turner Marine Bulk*, 621 So.2d 13 (La. App. 1993), *writ denied*, 629 So.2d 1169 (La. 1993) (use of railroad equipment to facilitate the movement of cargo in

interstate commerce not enough to establish defendant as a common carrier by railroad); *Estate of Anderson v. Martin Marietta Materials*, 567 S.E.2d 33 (Ga. App. 2002) (company that operated a locomotive on its own property to load cars with its own product not a common carrier under the FELA).

In this case, the facts are not in dispute on this issue. Railserve performs local switching operations within the Deer Park Rail Terminal in order to facilitate the storage of railcars at that location. It does not transport persons or goods from place to place for a fee as part of interstate commerce. It simply takes the cars that are delivered by the PTRA, moves them to holding tracks, and delivers them again to the delivery point when requested to do so by the terminal. It has a single contract with the DPRT, Inc., which is now with Deer Park Rail Terminal LLC, neither of which is a common carrier. There is no evidence that Railserve held itself out to the public as engaged in the business of transportation of persons or property from place to place for compensation, offering those services to the public generally. It falls clearly within the status of a switching company performing in-plant operations, which every court has held is not a common carrier for purposes of liability under the FELA.

## CONCLUSION

The Court should grant summary judgment to Railserve for the reasons set forth in its motion and this memorandum of law.

WHEREFORE, PREMISES CONSIDERED, Railserve, Inc. prays that its Motion for Summary Judgment be granted, that it recover its costs, and for all other relief, both legal and equitable, to which Railserve, Inc. may be justly entitled.

Respectfully submitted,

Richard A. Sheehy
State Bar No. 18178600
Sheehy, Serpe & Ware, P.C.
2500 Two Houston Center
909 Fannin Street
Houston, Texas  77010-1003
(713) 951-1000 – Telephone
(713) 951-1199 – Telecopier

**Attorney for Defendant**
**Railserve, Inc.**

Of Counsel:

Raymond A. Neuer
State Bar No. 14928350
Sheehy, Serpe & Ware, P.C.
2500 Two Houston Center
909 Fannin Street
Houston, Texas  77010-1003
(713) 951-1000 – Telephone
(713) 951-1199 – Telecopier

*Certificate of Service*

I hereby certify that a true and correct copy of the foregoing has been forwarded to all counsel of record in accordance with the Federal Rules of Civil Procedure on this the 28th day of September, 2007.

Francis I. Spagnoletti
Spagnoletti & Co.
1600 Smith, 45th Floor
Houston, Texas  77002

Wayne D. Collins
Collins & O'Neal, PLLC
1177 West Loop South, Suite 700
Houston, Texas  77027

Douglas W. Poole
McLeod, Alexander, Powel & Apffel, P.C.
802 Rosenberg, P. O. Box 629
Galveston, Texas 77553

Richard A. Sheehy

1172186