IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALEJANDRO BENAVIDEZ | § | |
| | § | |
| VS. | § | |
| BURLINGTON NORTHERN SANTA | § | |
| FE CORP; BNSF RAILWAY COMPANY | § | CIVIL ACTION: 3:07-CV-00105 |
| U. S. DEVELOPMENT GROUP, INC.; | § | [JURY] |
| DEER PARK RAIL TERMINAL, LLC; | § | |
| DEER PARK RAIL TERMINAL, INC.; | § | |
| USD, LLC; USD TERMINAL, LLC; | § | |
| U. S. DEVELOPMENT GROUP, LLC; | § | |
| RAILSERVE, INC. | § | |

---

## PLAINTIFF'S RESPONSE TO DEFENDANTS'
## SECOND MOTIONS FOR SUMMARY JUDGMENT

---

TO THE HONORABLE UNITED STATES DISTRICT JUDGE GRAY H. MILLER:

COMES NOW, **ALEJANDRO BENAVIDEZ**, ("Plaintiff"), and files his RESPONSE to Second Motion For Summary Judgment of Defendants Deer Park Rail Terminal, LLC ("DPRTLLC") and USD,LLC ("USD") (collectively referred to as the "Group") and in support thereof would show unto this court the following:

**I.**

### PLAINTIFF'S SUMMARY JUDGMENT EVIDENCE

1.      This Response is supported by the pleadings on file in this cause and Exhibits A-Q that are submitted as an Appendix hereto and fully incorporated by reference hereto. Further, the Exhibits A-P are true and correct copies of same.  (Ex. Q)

## II.

## STATEMENT OF FACTS

2.      USD/DPRT are common carrier railroads under FELA.  See Plaintiffs Response to

Motion for Summary Judgment Dkt. Nos. 58-74, which is adopted and incorporated by

reference as fully set forth herein.

3.      USD/DPRT retained Railserve, to conduct all operational rail movements at the

Deer Park Rail Terminal ("TERMINAL") for its 26 customers, including BNSF and the

PTRA. (Ex. B). The USD/DPRT's marketing branch/customer service department, located

offsite, received directions from its customers pertaining to the rail cars located at or

inbound to the DPRT[1].  (Ex. D,5; F,5; C; K,1; M).  The marketing branch relayed those

instructions to Brent Tucker (yard manager for USD/DPRT), who was located on-site at the

TERMINAL.  (Ex. C; E,5; F,5; K,1).   Brent Tucker would then instruct the Railserve

personnel at the TERMINAL as to the operational rail movements that needed to be

conducted at the TERMINAL.  (Ex. C).


4.      On April 4, 2005, Plaintiff was employed directly by Railserve and was performing

the job of a railroad brake man/switch man.  During the movement of 26 rail cars, Plaintiff

was thrown from the rail car because Railserve's engineer, Devon Stroud, applied the

brakes too soon and the "slack action" jerked Benavidez off the end of the train.  As a

result, Plaintiff, who was only 24 years old, was thrown from the train and had his left leg

severed.  The dangerous policy and procedure of not engaging the air brakes was a

Railserve to change Railserve's policy to switch cars without lacing or engaging the air brakes. (Ex. I,3; C). Railserve complied and changed its policy to not lace or engage the air brakes, which makes stopping the cars much more dangerous. (Ex. I,4; C). However, some time after this policy change, one of the Railserve crews pushed a railcar off the DPRT tracks. (Ex. I,5). Thereafter, Railserve returned to its original policy of "100% air." (Ex. I,6). Shortly thereafter, Paul Tucker again told Railserve to not use "100% air." (Ex. I,7; C). Railserve again amended policy and began switching railcars without lacing or engaging the air brakes. (Ex. I,8). According to Paul Tucker, at the time in which Alex's leg was amputated, the Railserve crews did not lace or engage the airbrakes. None of the air brakes were laced or engaged on the 26 rail cars and locomotive involved in the "shove" which caused Alex's to be severely injured. "No air" is listed on the applicable Incident Report as the "contributing factor" causing Alex's amputation. (Ex. G). Further, Charles Culver concurs that the lack of use of air brakes caused an increase in the severity slack action, causing Alex to be thrown from the train. (Ex. J).

### III.

### SUMMARY JUDGMENT STANDARD

6.      The moving party in a Summary Judgment must show that there is no genuine issue of material fact and that it is entitled to judgment in its favor as a matter of law. *Celotex v. Catrett* 477 U.S. 317, 322 (1986); *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). The nonmoving party must provide the Court with evidence in the record from which a jury might return a verdict in its favor. *Id.* at 1264. If it does so, a trial is required and summary judgment is not appropriate. *Id.*

### IV.

### ARGUMENTS AND AUTHORITIES

7.    Defendants argue that no master servant relationship exists such that Benavidez is not an employee of DPRT/USD under FELA.   Further, the Defendants argue that DPRT/USD did not control the activities of the Plaintiff to the extent a duty was created to the Plaintiff.

8.    Citing *Kelly v. Southern Pacific Co.*, 42 L.Ed.2d 498 (1974), the Fifth Circuit, in *Lindsey v. Louisville*, 775 F.2d 1322 (5th Cir. 1985), dealt with the exact issue of employment as presented in this matter.   The Fifth Circuit stated:

> [u]nder the FELA a worker can be the "employee" of a railroad even though carried on the employment rolls of another company and paid by that other company. The test of employment is the established test in workers' compensation cases. It is whether the railroad has control of the employee or the right to control the employee. The law does not require that the railroad have full supervisory control. It requires only that the railroad, through its employees, plays "a significant supervisory role" as to the work of the injured employee. *Kelley v. Southern Pacific Co.,* 419 U.S. 318, 327, 95 S.Ct. 472, 477, 42 L.Ed.2d 498 (1974).  The second principle of law is that the question whether the injured worker was acting as an employee of the railroad at the time of the injury under the FELA is a question of fact for the jury. *Baker v. Texas & Pacific Ry. Co.,* 359 U.S. 227, 228, 79 S.Ct. 664, 665, 3 L.Ed.2d 756 (1959).Finally, the third principle of law that guides the decision on this predominant issue in the case is the scope of judicial review of a jury verdict under the FELA. The Supreme Court defined the scope of judicial review of the jury verdict in *Lavender v. Kurn,* 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946). . . .

In the present case we cannot say that there was a complete absence of probative facts to support the jury's verdict that Lindsey under the FELA was an employee of the L & N Railroad at the time of his injury. Without reviewing the evidence in great detail, suffice it to say the record reveals evidence based largely upon the testimony of fellow workers that L & N **directed the employees as to which cars were to be unloaded**, that when any questions arose concerning the work the employees checked with representatives of L & N, and **that on some occasions the loading and unloading crews received specific orders and instructions from L & N employees**. There was further testimony **that the L & N piggy back agent at the yard was the recognized "boss"** of the Douglas crew and that he had employees of the railroad inspect the work of the crew in the loading and positioning of the trailers on the cars. **Finally, the evidence showed that the Douglas crew always reported directly to the Gentilly yard, that it was a permanent assignment, and that crew members never reported to the site of the Douglas business even for the purpose of getting their paychecks**. We must find that this is enough evidence to go to the jury on the issue of whether L & N was Lindsey's employer at the time of his injury.

9.      "Whether the injured worker was acting as an employee of the [common carrier] railroad at the time of the injury under the FELA is a *question of fact* for the jury." *Lindsey v. Louisville & Nashville R.R. Co.*, 775 S.W.2d 1322, 1324 (5th Cir. 1985). USD/DPRT created the daily switch list and told Railserve which cars to move where on a daily basis. (Ex. B; C; K,1). USD/DPRT told Railserve not to use

the air brake system when making rail movements. (Ex. C; I, 1-7). Railserve employees reported to work at the Terminal. Brent Tucker was considered the boss by the Railserve employees at the Terminal. (Ex. C.). Therefore, more than enough evidence exists to show that Alex Benavidez was the deemed employee of DPRT/USD.

10.     Further, an employee of an agent of a common carrier may be an employee of such carrier so as to be covered by the provisions of this chapter. *Kelly v. Delaware River Joint Commission*, 85 F.Supp. 15 (E.D. Pa. 1949). Where a railroad employee's injury is caused in whole or part by fault of others performing, under contract, **operational activities** of his employer, such others are agents within the meaning of this section, rendering railroad liable for negligence of other's employees. *Salvail v. Great Northern Ry. Co.,* 473 P.2d 549 (Mont. 1970). Though employees of an independent contractor are not accorded coverage under this chapter, if injured worker is employed by agent or adjunct of railroad he will be treated as employee of railroad for purposes of this chapter. *Smith v. Norfolk & W. Ry. Co.,* 407 F.2d 501 (CA4 1969), cert. denied 23 L.Ed.2d 767.  Independent contractor performing service for railroad employee at request of railroad is "agent" of railroad within the meaning of this chapter where service constitutes nondelegable operational activity of the carrier and where service is such that financial benefit accrues from the railroad therefrom. *Mangrum v. Union Pac. R. Co.,* 230 Cal.App.2d 960 (Cal. 1st Dist. 1964). Where operation of stockyards was part of operations activities of railroad, even though by contract the work in connection therewith was being performed by another company, railroad would be

Benevidez-Resp to 2nd MSJ.wpd

liable for negligent injury of employee of other company. *Oregon Short Line R. Co. V. Idaho Stockyards Co.*, 364 P.2d 826 (Utah 1961).

11.    DPRTI/USD contracted with Railserve for Railserve to provide train engines, switching, staging and blocking operations at the DPRT. (Ex. B.)  In fact, Railserve was the sole entity conducting operational rail movements at the DPRT at the time of the incident.  (Ex. B).  Alex Benavidez was injured in the performance of an operational rail movement at the DPRT.  DPRT/USD retained Railserve to do the operational rail movements at the DPRT and  is, therefore, liable for the injuries sustained to Benavidez.

12.    Further, USD/DPRT controlled the means and methods of the operational rail movements performed by Railserve, including Alex Benavidez, at the time Benavidez was injured.  Railserve's policy is to hook up the air brakes on all operational rail movements. (Ex. C and I). Brent Tucker, on behalf of USD/DPRT, specifically told Railserve management and employees to kick three cars and not hook up the air brakes for all operational rail movements.  See (Ex. C and I).  The air brakes were not hooked up on the rail car from which Benavidez fell.  (Ex. I, 7and J.)  If the air brakes had been hooked up, then Benavidez would not been thrown from the train. (Ex. F,1; G and J).  Therefore, USD policy and procedure of not hooking up the air brakes directly led to the injuries sustained by Benavidez. (Ex. F,1; G and J).  As a result, Benavidez is the deemed employee of USD/DPRT for the purposes of FELA liability.  Accordingly, USD/DPRT is liable under FELA for the injuries sustained by Benavidez.

## A.    COMMON LAW NEGLIGENCE

13.    In Texas, the general rule is that an owner or occupier has no duty to see that an independent contractor performs work in a safe manner. *See Abalos v. Oil Development Co.,* 544 S.W.2d 627, 631 (Tex.1976). In 1985, the Texas Supreme Court in *Redinger v. Living, Inc.*, adopted section 414 of the Restatement (Second) of Torts, which provided an exception to the general rule when a premises owner or general contractor exercises some control over the work of an independent contractor or subcontractor:

> One who entrusts work to an independent contractor, but who retains the control over any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

*Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex.1985) (citing Restatement (Second) of Torts § 414 (1977)).   Control may be proven in two ways: (1) a contractual right of control or (2) an exercise of actual control. *Dow Chem. Co. v. Bright,* 89 S.W.3d 602, 606 (Tex.2002); *Elliott-Williams Co., Inc. v. Diaz,* 9 S.W.3d 801, 804 (Tex.1999); *Chi Energy, Inc. v. Urias,* 156 S.W.3d 873, 879 (Tex. App.-El Paso 2005, pet. denied). The owner, to be liable, must have the right to control the means, methods, or details of the independent contractor's work to the extent that the independent contractor is not entirely free to do the work his own way. *Diaz,* 9

Benevidez-Resp to 2nd MSJ.wpd

S.W.3d at 804. "[T]he right to control the work must extend to the 'operative detail' of the contractor's work." *Urias*, 156 S.W.3d at 880. In *Hoechst-Celanese Corp. v. Mendez*, the Texas Supreme Court held that, when an employer requires an independent contractor to observe workplace safety rules, it does ***not*** impose on the employer an ***unqualified duty*** of care to ensure that the independent contractor's employees did nothing unsafe. *See* 967 S.W.2d 354, 357-58 (Tex.1998) (per curiam). Instead, the employer owes a narrow duty that any safety requirements and procedures it promulgated or approved did not unreasonably increase, rather than decrease, the probability and severity of injury. In *Lee Lewis Construction, Inc. v. Harrison,* the Texas Supreme Court upheld a finding that a general contractor, LLC, was liable for the death of an independent contractor's employee, who fell from a ten-story building when his safety support system failed. *Lee Lewis Construction, Inc. v. Harrison,* 70 S.W.3d 778, 782 (Tex.2001). **The Texas Supreme Court noted the evidence demonstrating the superintendent personally witnessed and approved the specific fall-protection systems used by the independent contractor**.

14.     When Railserve first conducted rail operations at the TERMINAL, Railserve's written policy was to use 100% air on all rail movements.   (Ex. I, 2).   As employees/representatives of DPRT/USD Paul Tucker and Brent Tucker told Railserve not to use the air brakes and Railserve obeyed the order. (Ex. C; I, 2-7). At the time, Alex Benavidez was injured the airbrakes were not engaged. (Ex. I, 7). The failure to engage the airbrakes increased the risk of injury to Alex Benavidez

and caused the injuries to Alex Benavidez.  (Ex. F,1; G; and J).  Further, by their

own admission (see Dkt. 87 footnote 2), Defendants admit that these facts do not

allow for a summary judgment.  Moreover, the level of actual control exerted over

the airbrake system negates the Defendants' argument that the Defendants are not

deemed employers under element number two of the FELA cause of action.  *Supra*.

WHEREFORE PREMISES CONSIDERED, Plaintiff requests that this Court

Deny the Defendants' Second Motions for Summary Judgments, and grant Plaintiff

all relief to which he may be entitled, under law and equity.

Respectfully submitted,

SPAGNOLETTI & CO.

Francis I. Spagnoletti
State Bar No. 18869600
401 Louisiana Street, 8th Floor
Houston, Texas 77002
Telephone:   713-653-5600
Facsimile:    713-653-5656

**OF COUNSEL**
COLLINS & O'NEAL, P.L.L.C.
Wayne D. Collins
Texas Bar No.: 00796384
1177 West Loop South, Suite 700
Houston, Texas 77027
713-222-0381
713-759-9650 Facsimile
ATTORNEY FOR PLAINTIFF

Benevidez-Resp to 2nd MSJ.wpd

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded to all counsel of record via facsimile, Certified Mail/RRR or U.S. First Class Mail in accordance with the Federal Rules of Civil Procedure on this the 14th day of January, 2008.


Raymond Neuer
Sheehy, Serpe & Ware, P.C.
2500 Two Houston Center
909 Fannin Street
Houston, Texas 77010
Telecopier 713-951-1199


Douglas W. Poole
McLeod, Alexander, Powel & Apffel, P.C.
802 Rosenburg, PO Box 629
Galveston, Texas 77553


Wayne D. Collins

Benevidez-Resp to 2nd MSJ.wpd